Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 1285265 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Briefs and Other Related Documents
Brown v. Bandai America, Inc.N.D.Tex.,2002.Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.
Kenneth BROWN Plaintiff,
v.
BANDAI AMERICA, INC., et al. Defendants.
No. 3-01-CV-0442-R.

June 4, 2002.

ORDER
BUCHMEYER, J.
*1 After making an independent review of the pleadings, files and records in this case, and the Findings and Recommendation of the United States Magistrate Judge, I am of the opinion that the Findings and Recommendation of the Magistrate Judge are correct and they are hereby adopted as the Findings of the Court.

*FINDINGS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*
KAPLAN, Magistrate J.
Defendant Sunrise, Inc. ("Sunrise") has filed a motion to set aside a default entered by the district clerk on November 15, 2001. The motion has been referred to U.S. Magistrate Judge Jeff Kaplan for recommendation pursuant to 28 U.S.C. § 636(b) and an order of reference dated February 14, 2002. [FN1]

> FN1. The motion was originally referred to U.S. Magistrate Judge Jane J. Boyle. *See* Order, 2/14/02. By order dated April 19, 2002, this case was reassigned to Judge Kaplan after Judge Boyle resigned to become the United States Attorney for the Northern District of Texas. *See* Misc. Order 3-204, Attch. A (Apr. 19, 2002).

I.

Plaintiff Kenneth Brown ("Brown") holds a registered copyright on certain illustrated cartoon drawings known as "Bone Masters"-unique humanoid figures that incorporate dinosaur bones on the outside of their bodies and transform into dinosaurs. (Plf. First Am. Compl. at 3, ¶ 9 & Exh. A). Bandai America, Inc. ("Bandai") and its Japanese affiliate, Sunrise, manufacture and market a line of toy action figures known as "Dinozaurs." (*Id.* at 4, ¶¶ 11-12). "Dinozaurs," like "Bone Masters" characters, incorporate dinosaur-like bones on the head, legs, arms, and torsos. (*Id.* at 3, ¶ 12 & Exh. B). From July 28, 2000 through November 17, 2000, the "Dinozaurs" characters appeared on a cartoon television show broadcast in the United States over the Fox Children's Network ("Fox"). (*Id.* at 4-5, ¶¶ 11, 13).

On March 6, 2001, Brown filed this action against Bandai for copyright infringement.[FN2] An amended complaint joining Sunrise and Fox as defendants was filed on August 21, 2001. Brown alleged that Sunrise, a Japanese corporation doing business in Texas, could be served through the Secretary of State. (*Id.* at 2, ¶ 3). On September 10, 2001, the summons and a copy of Plaintiff's First Amended Complaint were served on the Texas Secretary of State in accordance with Section 17.044(b) of the Texas Civil Practice and Remedies Code.[FN3] (Sunrise Mot., Hamilton Decl. at 1, ¶ 2 & Exh. 1). The Secretary of State forwarded the summons and complaint to Takayuki Yoshii, President of Sunrise, Inc., by registered mail on September 17, 2001. (*Id.*). Sunrise received the documents at its Tokyo offices on October 2, 2001. (*Id.*, Yoshii Am. Decl. at 1, ¶ 2 & Exh. 1).

> FN2. Bandai filed a declaratory judgment action against Brown in California federal court on December 21, 2000. That case was dismissed for lack of personal jurisdiction. *Bandai America, Inc. v. Brown,* No. 00-13364 (C.D.Cal. Jun. 1, 2001).

> FN3. This statute provides, in relevant:
> The secretary of state is an agent for service of process on a nonresident who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for services of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party.
> Tex. Civ. Prac. & Rem.Code Ann. § 17.044(b) (Vernon 1997). The term

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:06-cv-02084-P   Document 15-2   Filed 12/15/06   Page 2 of 6   PageID 140

Not Reported in F.Supp.2d                                                                                                Page 2
Not Reported in F.Supp.2d, 2002 WL 1285265 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

"nonresident" includes "a foreign corporation, joint-stock company, association, or partnership." *Id.* § 17.041.

Rather than file an answer or a motion challenging personal jurisdiction or the sufficiency of service, Sunrise, through its attorney, notified Brown by letter that service was defective. On October 16, 2001, counsel for Sunrise wrote:

We believe the attempted service was not in compliance with Federal Rules of Civil Procedure ("FRCP"), Rule 4(f), (h) because (1) the summons and complaint were not in the language of the recipient foreign country; and (2) the plaintiff's service of process was not otherwise in compliance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). Accordingly, Sunrise, Inc. need not answer or appear, and should you take their default, it will successfully be collaterally attacked on the basis of defective service.

*\*2 (Id.,* Hamilton Decl., Exh. 2). Brown's attorney failed to acknowledge this letter or repeated inquiries dated October 23 and 31, 2001. *(Id.,* Hamilton Decl., Exhs. 3 & 4). On November 14, counsel for Brown finally responded that he believed Sunrise had been properly served and, as a courtesy, advised that "Plaintiff will be moving shortly for entry of default ..." *(Id.,* Hamilton Decl., Exh. 5). True to his word, Brown's lawyer filed a request for entry of default on November 15, 2001. *(Id.,* Hamilton Decl., Exh. 6). The district clerk entered a default the same day.

On January 30, 2002-more than 10 weeks after this default was entered-Sunrise filed a motion to set aside the entry of default. An amended brief in support of the motion was filed on February 11, 2002. The issues have been fully briefed by the parties and the motion is ripe for determination.

II.

A district court may grant relief from a default for good cause shown. Fed. R. Civ. P. 55(c). The term "good cause" is not susceptible of precise definition, and no fixed standard can anticipate all the situations that may occasion a party's failure to timely answer a complaint. *Matter of Dierschke,* 975 F.2d 181, 183 (5th Cir.1992). Courts generally look to three factors when assessing good cause in a default setting: (1) whether the default was willful; (2) whether setting aside the judgment will prejudice the plaintiff; and (3) whether a meritorious defense is presented. *CJC Holdings, Inc. v. Wright & Lato, Inc.,* 979 F.2d 60, 64 (5th Cir.1992); *Dierschke,* 975 F.2d at 183. "Although a motion to set aside a default decree under [Rule] 55(c) is somewhat analogous to a motion to set aside a judgment under [Rule] 60(b), the standard for setting aside a default decree is less rigorous than setting aside a judgment for excusable neglect." *United States v. One Parcel of Real Property,* 763 F.2d 181, 183 (5th Cir.1985), citing *Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981). *But see CJC Holdings,* 979 F.2d at 63-64 n. 1 (suggesting without deciding that standards for setting aside entry of default and default judgment may be the same).

III.

Sunrise presents three arguments in support of its motion: (1) it did not have a reasonable opportunity to respond to the complaint; (2) service was defective under the federal rules and the Hague Convention; and (3) good cause exists to set aside the entry of default. The Court will address these arguments in turn.

A.

Sunrise first contends that the clerk's entry of default violated due process because it did not have a reasonable opportunity to respond to the complaint. As Sunrise correctly notes, the time period within which a nonresident defendant must answer or otherwise appear runs from the date substituted service is obtained on the Secretary of State. *See Fidelity Funding, Inc. v. Pollution Research and Control Corp.,* 1999 WL 20955 at \*2 (N.D.Tex. Jan. 7, 1999), citing *Bonewitz v. Bonewitz,* 726 S.W.2d 227, 230 (Tex.App.-Austin 1987, writ ref'd n.r.e.). Here, the Secretary of State was served on September 10, 2001. This required Sunrise to respond by October 3, 2001.[FN4] However, it did not actually receive the summons and complaint until October 2, 2001-the day before the answer was due. Under these circumstances, Sunrise maintains that service was not "reasonably calculated to afford it a reasonable opportunity to present its objections [to the complaint]." (Sunrise Am. Br. at 9).

FN4. Sunrise was required to answer or otherwise appear within 20 days after the Secretary of State was served. *See* Fed. R.

Case 3:06-cv-02084-P  Document 15-2  Filed 12/15/06  Page 3 of 6  PageID 141

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 2002 WL 1285265 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

Civ. P. 12(a)(1)(A). This period was extended by three days under Rule 6(e) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 6(e) ( "Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper ... and the notice or paper is served on the party under Rule 5 ... 3 days shall be added to the prescribed period.").

*3 This argument might be more compelling had Brown obtained a default immediately after the answer was due. Instead, his lawyer waited until November 15, 2001 to request an entry of default.[FN5] Sunrise fails to explain why it could not file an answer or formal objections to the complaint during this six-week period. Indeed, Sunrise retained an attorney and contested the sufficiency of service and personal jurisdiction through letters to opposing counsel dated October 16, 23, and 31, 2001. Based on these facts, there was no due process violation.

> FN5. Brown mistakenly asserts that he was required to seek entry of a default or risk having his claims against Sunrise dismissed. (Brown Sur-Reply at 4-5). Local Civil Rule 55.1 provides:
> If a defendant has been in default for 90 days, the presiding judge may require plaintiff to move for entry of default and a default judgment. If the plaintiff fails to do so within the prescribed time, the presiding judge will dismiss the action, without prejudice, as to that defendant.
> LR 55.1. As of November 15, 2001, Sunrise had been in default for only 44 days.

B.

Sunrise further contends that service was defective under the federal rules and the Hague Convention. Rule 4(h) of the Federal Rules of Civil Procedure provides that a foreign corporation outside the judicial district may be served "in any manner prescribed for individuals by subdivision (f) ..." Fed. R. Civ. P. 4(h). One method of service authorized by Rule 4(f) is "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; ..." Fed. R. Civ. P. 4(f)(1). Japan is a signatory to the Hague Convention. *See Mateo v. M/S KISO,* 805 F.Supp. 792, 796 (N.D.Cal.1992). The Court must therefore determine whether Sunrise was properly served in accordance with the requirements of the Convention.[FN6]

> FN6. The Hague Convention preempts any inconsistent methods of service prescribed by Texas law in all cases where the Convention applies. *See Paradigm Entertainment, Inc. v. Video System Co., Ltd.,* 2000 WL 251731 at *4 (N.D.Tex. Mar. 3, 2000), citing *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 700, 108 S.Ct. 2104, 2108, 100 L.Ed.2d 722 (1988).

The Hague Convention is a multilateral treaty formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law. *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722 (1988). The Convention is intended to: (1) simplify means of serving process abroad; (2) assure that foreign defendants receive actual and timely notice of suit; and (3) facilitate proof of service. *Id.,* 108 S.Ct. at 2107. Pursuant to the Convention, each signatory nation has established a Central Authority to receive requests for service of documents from other countries. *Id.,* citing Hague Convention, Art. 2. Japan has designated its Minister of Foreign Affairs as its Central Authority and requires that documents submitted for service be written in or translated into Japanese. *Mateo,* 805 F.Supp. at 796; *McClenon v. Nissan Motor Corp. in U.S.A.,* 726 F.Supp. 822, 824 n. 1 (N.D.Fla.1989), citing Hague Convention, Art. 5. Because the summons and complaint in this case were not submitted to the Japanese Minister of Foreign Affairs or translated into Japanese, Sunrise argues that service was defective.

The Court disagrees. The Hague Convention specifically allows a signatory nation to consent to methods of service other than through its Central Authority. *Volkswagenwerk,* 108 S.Ct. at 2108. Article 10 of the Convention states:
Provided the State of destination does not object, the present Convention shall not interfere with-
(a) the freedom to send judicial documents, by postal channels, directly to persons abroad [.]
*4 (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.
(c) the freedom of any person interested in a judicial

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:06-cv-02084-P  Document 15-2  Filed 12/15/06  Page 4 of 6  PageID 142
Not Reported in F.Supp.2d                                                                         Page 4
Not Reported in F.Supp.2d, 2002 WL 1285265 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Hague Convention, Art. 10. Although Japan has objected to subsections (b) and (c), it has not objected to subsection (a). See Bankston v. Toyota Motor Corp., 889 F.2d 172, 173 (8th Cir.1989); Mateo, 805 F.Supp. at 796. The critical issue therefore becomes whether Article 10(a) permits service of process by mail on a Japanese defendant.

Unfortunately, there is no clear-cut answer to this question. Some courts have held that use of the term "send" in Article 10(a) was intended to apply only to the transmission of judicial documents once service was properly obtained through the Central Authority. See e.g., Bankston, 889 F.2d at 174; Mateo, 805 F.Supp. at 797; Wilson v. Honda Motor Co., Ltd., 776 F.Supp. 339, 342 (E.D.Tenn.1991); McClenon, 726 F.Supp. at 826; Cooper v. Makita, U.S.A., Inc., 117 F.R.D. 16, 17 (D.Me.1987); Mommsen v. Toro Co., 108 F.R.D. 444, 446 (S.D.Iowa 1985). Other courts, recognizing that the purpose of the Hague Convention is to effectuate service of process on foreign defendants, have concluded that the term "send" also refers to judicial documents necessary to obtain service. See e.g., Ackermann v. Levine, 788 F.2d 830, 838-39 (2d Cir.1986); Schiffer v. Mazda Motor Corp., 192 F.R.D. 335, 337-38 (N.D.Ga.2000); Middleton v. Noble Drilling Corp., 89 F.Supp.2d 874, 875 (S.D.Tex.2000); Coblentz GMC/Freightliner v. General Motors Corp., 724 F.Supp. 1364, 1372 (M.D.Ala.1989), aff'd, 932 F.2d 978 (11th Cir.1991) (Table); Meyers v. ASICS Corp., 711 F.Supp. 1001, 1007-08 (C.D.Cal.1989). The Fifth Circuit has not yet addressed the issue. Nor is there uniformity among the judges in this district. Compare Paradigm Entertainment, Inc. v. Video System Co., Ltd., 2000 WL 251731 at *6-7 (N.D.Tex. Mar. 3, 2000) (holding service by mail appropriate under Hague Convention), with Postal v. Princess Cruises, Inc., 163 F.R.D. 497, 499 (N.D.Tex.1995) (service by mail not proper under Convention).

Having carefully reviewed these conflicting authorities, the Court determines that service of process by mail is permissible under Article 10(a) of the Hague Convention. The Supreme Court has instructed that treaties should be liberally construed and that "to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." Volkswagenwerk, 108 S.Ct. at 2108. Thus, the entire context of the treaty is important in construing the document. See Schiffer, 192 F.R.D. at 338, citing Maximov v. United States, 299 F.2d 565, 568 (2d Cir.1962), aff'd, 83 S.Ct. 1054 (1963). The Hague Convention exists to facilitate service abroad. Id.; Paradigm Entertainment, 2000 WL 251731 at * 6. Given the purpose of the treaty, "[t]he placement of one lone subprovision dealing with the mailing of nonservice documents in the midst of fifteen articles addressing service of process [ ] would be inconsistent with the structure of the entire Convention." Paradigm Entertainment, 2000 WL 251731 at *6, quoting R. Griggs Group, Ltd. v. Filanto Spa, 920 F.Supp. 1100, 1105 (D.Nev.1996). Indeed, other provisions of the Convention use alternative language to represent the concept of formal service of process of judicial documents. Id. (noting that term "method of transmission" as used in Article 21 is synonymous with "service of process"). This conclusion is also consistent with the report of a special commission of experts from signatory nations convened to give guidance on the operation of the Hague Convention. See Schiffer, 192 F.R.D. at 338-39, citing Hague Conference on Private International Law: Special Commission Report on the Operation of the Hague Service Convention and the Hague Evidence Convention, 28 I.L.M. 1556, 1561 (1989). With respect to Article 10(a), the commission report makes clear that:

*5 [T]he postal channel for service constitutes a method which is quite separate from service via the Central Authorities or between judicial officers. Article 10(a) in effect offered a reservation to Contracting States to consider that service by mail was an infringement of their sovereignty. Thus, theoretical doubts about the legal nature of the procedure were unjustified.

Id. at 338. The Japanese delegation to the commission specifically stated that Japan did not consider service by mail to be an infringement on its sovereign power. Id.

As a foreign corporation allegedly doing business in the State of Texas without appointing a registered agent for service of process, Sunrise was properly served through the Secretary of State. See Fed. R. Civ. P. 4(h) & Tex. Civ. Prac. & Rem.Code Ann. § 17.044(b). The Secretary of State, in turn, forwarded the summons and a copy of the complaint by registered mail to the president of Sunrise in Japan. This method of service was sufficient under the federal rules and Article 10(a) of the Hague Convention.[FN7]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:06-cv-02084-P   Document 15-2   Filed 12/15/06   Page 5 of 6   PageID 143

Not Reported in F.Supp.2d                                                                                                    Page 5
Not Reported in F.Supp.2d, 2002 WL 1285265 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

FN7. Because service was properly effected under Article 10(a) of the Convention and not through Japan's Central Authority, Brown was not required to have the summons and complaint translated into Japanese. *See Heredia v. Transport S.A.S., Inc.,* 101 F.Supp.2d 158, 162 (S.D.N.Y.2000); *McClenon,* 726 F.Supp. at 825 n. 3; *Weight v. Kawasaki Heavy Industries,* 597 F.Supp. 1082, 1086 (E.D.Va.1984).

C.

Alternatively, Sunrise argues that the entry of default should be set aside on equitable grounds. The decision to set aside a default decree lies within the sound discretion of the court. *One Parcel of Real Property,* 763 F.2d at 183. However, "modern federal procedure favors trials on the merits [and] an abuse of discretion need not be glaring to justify reversal." *Id.,* quoting *Keegel v. Key West & Caribbean Trading Co.,* 627 F.2d 372, 373-74 (D.C.Cir.1980). The threshold inquiry is whether the failure to answer the complaint was "willful." *Lacy v. Sitel Corp.,* 227 F.3d 290, 292 (5th Cir.2000), quoting *Dierschke,* 975 F.2d at 184 ("A finding of willful default ends the inquiry for when the court finds an intentional failure of responsive pleadings there need be no other finding."). If the movant can establish justifiable neglect, the court may consider other equitable factors. *See FSLIC v. Kroenke,* 858 F.2d 1067, 1069 (5th Cir.1988).

As previously discussed, Sunrise had ample time to file an answer or a motion to dismiss after it was served with the summons and complaint. Yet it chose to raise its objections informally with opposing counsel rather than file a responsive pleading. This decision, while imprudent, does not rise to the level of willfulness. To the contrary, the evidence shows that counsel for Sunrise tried to discuss her position with Brown's attorney on multiple occasions in October 2001. Her inquiries were ignored. Finally, on November 14, 2001, counsel for Brown responded that his client "will be moving shortly for entry of default ..." (*Id.,* Hamilton Decl., Exh. 5). *The very next day* counsel obtained a default against Sunrise. This precipitous action violates the spirit, if not the letter, of the Texas Lawyer's Creed and militates against a finding of willfulness. *See* The Texas Lawyer's Creed: A Mandate for Professionalism, art. III, § 11 (Nov.1989) ("I will not take advantage, by causing any default or dismissal to be rendered, when I know the identity of an opposing counsel, without first inquiring about that counsel's intent to proceed.").FN8

FN8. Brown points out that counsel for Sunrise defiantly refused to file an answer because "it would set a precedent" for his other Japanese clients and "courts do not uphold defaults anyway." (Brown Sur-Reply, Exh. A at 2, ¶ 6). While this assertion might suggest willfulness if made before a default was entered, such was not the case here. Rather, the remark was allegedly made by counsel for Sunrise sometime after the clerk's entry of default. The fact remains that Brown's attorney never gave *meaningful* notice of his intent to seek a default so opposing counsel could file an answer if he was so inclined.

*6 Brown further maintains that he would be prejudiced if the default was set aside because of the delay occasioned by Sunrise's failure to answer or otherwise plead. However, mere delay does not alone constitute prejudice. Rather, "the plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Lacy,* 227 F.3d at 293, quoting *Berthelsen v. Kane,* 907 F.2d 617, 621 (6th Cir.1990). No such showing has been made in this case.

Even in the absence of willful neglect by the defendant or unfair prejudice to the plaintiff, a court has discretion not to upset a default if the defendant fails to present a meritorious defense. *Id.* Sunrise maintains that its "Dinozaurs" products are not substantially similar to the "Bone Masters" characters and therefore do not infringe on Brown's copyright. (Sunrise Reply Br. at 6). Moreover, Sunrise denies copying the "Bone Masters" figures. (*Id.*). These allegations, though thin, are sufficient to set up a meritorious defense.FN9

FN9. The Court recognizes that Sunrise raised this meritorious defense for the first time in its reply brief. However, Brown was allowed to address this argument in a sur-reply.

*RECOMMENDATION*

For these reasons, Defendant Sunrise, Inc.'s motion to set aside entry of default should be granted. The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 3:06-cv-02084-P   Document 15-2   Filed 12/15/06   Page 6 of 6   PageID 144

Not Reported in F.Supp.2d                                                                                    Page 6
Not Reported in F.Supp.2d, 2002 WL 1285265 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

clerk's entry of default dated November 15, 2001 should be set aside.

N.D.Tex.,2002.
Brown v. Bandai America, Inc.
Not Reported in F.Supp.2d, 2002 WL 1285265 (N.D.Tex.)

Briefs and Other Related Documents (Back to top)

• 3:01cv00442 (Docket) (Mar. 06, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.