Westlaw.

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 2004 WL 733844 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents

Stelax Industries, Ltd. v. DonahueN.D.Tex.,2004.Only the Westlaw citation is currently available.
United States District Court,N.D. Texas, Dallas Division.
STELAX INDUSTRIES, LTD., Plaintiff,
v.
William DONAHUE, Alder Trading Corporation, Neil Gibson, William Woolstencroft, David Perry, and John Matias, Jr., Defendants.
**No. 3:03-CV-923-M.**

March 25, 2004.

Barry L. Hardin, Daniel J. Madden, Mark A. Goodman, David Goodman & Madole, Dallas, TX, for Plaintiff.
William Donahue, West Bloomfield, MI, pro se.
John M. Phalen, Jr., Daniel Sheehan & Associates, Dallas, TX, for Defendants.

*MEMORANDUM OPINION AND ORDER*
LYNN, J.
*1 Before the Court are Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, filed on August 21, 2003; Defendants' Motion to Set Aside Clerk's Entry of Default, filed on September 9, 2003; [FN1] and Plaintiff's Motion for Partial Default Judgment by Court, filed on August 15, 2003. The Court grants in part and otherwise denies Defendants' Motion to Dismiss for Lack of Personal Jurisdiction; grants Defendants' Motion to Set Aside Clerk's Entry of Default; and denies Plaintiff's Motion for Partial Default Judgment by Court.

> FN1. Although the August 21 and September 9 motions are styled as though filed by all Defendants in this action, the motions were filed only by Defendants Alder Trading Corporation, Neil Gibson, William Woolstencroft, David Perry, and John Matias, Jr. Defendant William Donahue has already answered and thus waived any contest to this Court's assertion of personal jurisdiction over him. Further, since Donahue has already answered, the Clerk did not enter default as to him.

**I. BACKGROUND**

Plaintiff brings suit against Defendants, alleging the following facts: Plaintiff Stelax Industries, Ltd. ("Stelax") is a multi-national Canadian corporation with its principal office in Dallas County, Texas. In 2002, Plaintiff's subsidiary in the United Kingdom, Stelax UK, was placed in receivership, and Plaintiff immediately began efforts to raise funding to purchase Stelax UK's assets. Plaintiff entered into a contract with William Donahue to obtain funding to purchase the assets of Stelax UK. In an attempt to further Donahue's efforts, Plaintiff transferred 170,000 shares of its stock to Donahue to be used as collateral for any funding obtained. In late 2002, Plaintiff employed Donahue as its Vice President of Operations. In this capacity, Donahue identified Alder Trading Corporation ("Alder") to Plaintiff as a prospective source of funding. Plaintiff negotiated with Alder through Alder's agents Neil Gibson, John Matias, Jr., David Perry, and William Woolstencroft and entered into a contract with Alder to fund the purchase of Stelax UK's assets. During discussions of the terms of the funding agreement, Plaintiff disclosed its confidential business plans and models for the new company it intended to form once the assets were purchased. As a good faith gesture toward this agreement, Plaintiff deposited 118,000 shares of its stock in Gibson's personal trading account. Throughout these discussions, the individual Defendants, individually and as Alder's agents, failed to disclose that Donahue was a director of Alder and that Donahue was acting in the interest of himself and Alder rather than in the interest of Plaintiff. Alder independently sought to purchase Stelax UK's assets, with the intent of forming a new company modeled after the company Plaintiff had intended to form. The individual Defendants, individually and as Alder's agents, failed to disclose that Alder intended to purchase Stelax UK's assets itself and to use Plaintiff's business plans and models to form a new company.

Based on the above allegations, Plaintiff asserts claims against all Defendants for breach of contract, conversion, fraud, tortious interference with prospective contractual relations, breach of fiduciary duty, conspiracy, and misappropriation of trade secrets.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 733844 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

On August 21, 2003, Defendants Alder, Gibson, Woolstencroft, Perry, and Matias filed a Motion to Dismiss for Lack of Personal Jurisdiction. When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction over the nonresident. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir.2001). Alder is not incorporated in Texas nor is its principal place of business in Texas, and none of the individual Defendants reside in Texas. Therefore, Plaintiff has the burden of establishing personal jurisdiction over these Defendants.

**\*2** The Court may exercise personal jurisdiction over a nonresident defendant if (1) the Texas long-arm statute creates personal jurisdiction over the defendant and (2) the exercise of personal jurisdiction is consistent with the Constitution's due process requirements. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir.2002). Because the Texas long-arm statute reaches to the Constitutional limits, the Court need only engage in the due process analysis. *Id .* at 470. Personal jurisdiction over a non-resident defendant comports with the requirements of due process if (1) the nonresident purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the state and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Lewis*, 252 F.3d at 258.

Although "minimum contacts" may be established with a showing of specific jurisdiction or general jurisdiction, Plaintiff seeks to assert only specific jurisdiction over Defendants. In order to assert specific jurisdiction over Defendants, Plaintiff must show that Defendants' contacts arise from, or are directly related to, the causes of action asserted. *Id.* The Court must conduct the minimum contacts analysis separately for each cause of action asserted because Plaintiff is obligated to secure jurisdiction over each Defendant with respect to each claim brought. *BeautiControl, Inc. v. Burditt,* No. 3:01-CV-0744-M, 2001 WL 1149360, at \*2 (N.D.Tex. Sept.26, 2001); *Denmark v. Tzimas,* 871 F.Supp. 261, 266 (E.D.La.1994); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 3d § 1069.7 (2002) ("[I]t is important to remember that a plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts ."); *see also Sunward Elecs., Inc. v. McDonald,* 362 F.3d

17, 2004 WL 386588, at \*4 (2nd Cir. Mar.3, 2004) ("A plaintiff must establish the court's jurisdiction with respect to each claim asserted."); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1289 n. 8 (9th Cir.1977) ("Where, as here, a plaintiff raises two separate causes of action, the court must have in personam jurisdiction over the defendant with respect to each claim.").

Where, as here, the Court decides a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, Plaintiff may "satisfy its burden by presenting a *prima facie* case for jurisdiction." *Gardemal v. Westin Hotel Co.,* 186 F.3d 588, 592 (5th Cir.1999). In determining whether Plaintiff has satisfied this burden, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *Id.* Plaintiff's First Amended Complaint does not make any specific allegations relevant to the minimum contacts analysis. Therefore, the Court will look at the facts contained in the affidavit of Harmon Hardy, Chairman and Chief Executive Officer of Stelax, to determine whether Plaintiff has presented a *prima facie* case for jurisdiction.

### A. Fraud

**\*3** In *Calder v. Jones,* the Supreme Court found that a California court had personal jurisdiction over two newspaperman in a libel action based on a defamatory article written in Florida that affected the plaintiff's reputation in California because "their intentional, and allegedly tortious, actions were expressly aimed at California." *Calder v. Jones,* 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). "[T]he key to *Calder* is that the effects of an alleged intentional tort are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum." *Panda Brandywine Corp. v. Potomac Elec. Power Co.,* 253 F.3d 865, 869 (5th Cir.2001). "Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum ." *Wien Air Alaska,* 195 F.3d at 212.

In his affidavit, Hardy states that all Defendants "were at all times made aware by me that Stelax was headquartered in Dallas, Texas." Therefore, it was foreseeable to Defendants that their allegedly fraudulent acts would cause harm in Texas. Although this alone is insufficient to confer specific jurisdiction over Defendants with respect to the fraud claim, it

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 733844 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

should be assessed as part of the analysis of Defendants' relevant contacts with the forum. *Panda Brandywine Corp.*, 253 F.3d at 869.

"When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska,* 195 F.3d at 213. In his affidavit, Hardy contends that the individual Defendants, in their individual capacities and as agents of Alder, made numerous phone calls to Hardy in Dallas, Texas. Hardy contends that during those phone calls the individual Defendants failed to disclose that Donahue held any position with Alder or that Alder intended to attempt to purchase the Stelax UK assets for itself. Therefore, to the extent Plaintiff's fraud claim is premised on Defendants' failure to disclose during phone conversations with Hardy, while Hardy was in Texas, that Donahue held a position with Alder or that Alder intended to attempt to purchase the Stelax UK assets for itself, Defendants have purposefully availed themselves of Texas's benefits and protections. To the extent Plaintiff's fraud claim is premised on any other communications between the individual Defendants and Hardy, Plaintiff's fraud claim is dismissed for lack of personal jurisdiction, because Plaintiff has not alleged or provided affidavit testimony that any such communications were directed at Texas, and mere foreseeable injury in Texas is insufficient to establish minimum contacts. Similarly, to the extent Plaintiff's fraud claim is premised on misrepresentations as opposed to omissions during the phone conversations with Hardy, while Hardy was in Texas, Plaintiff's claim is dismissed for lack of personal jurisdiction. Although such misrepresentations would fall within the rule in *Wien Air Alaska,* Plaintiff has not alleged in the First Amended Complaint nor provided evidence by affidavit that any affirmative misrepresentations occurred during these phone conversations. Therefore, Plaintiff has failed to establish a *prima facie* case for jurisdiction over these claims.

*4 In ruling that Plaintiff has established a *prima facie* case for jurisdiction over fraud claims premised on alleged omissions during the phone conversations between Defendants and Hardy, while Hardy was in Texas, the Court overrules two arguments asserted by Defendants. First, Defendants contend that Plaintiff has not asserted a cause of action for fraud relating to the failure to disclose information. However, in the fraud count of Plaintiff's First Amended Complaint, Plaintiff states: "Defendants' actions, inactions, material misstatements of fact and inducements constitute fraud," which includes allegations of both

misrepresentations and omissions. Second, Defendants argue that "[o]ne cannot merely have a phone conversation with a nonresident and claim the nonresident should have told him something, thereby invoking personal jurisdiction over the nonresident." However, in *Wien Air Alaska,* the Fifth Circuit recognized that personal jurisdiction over a breach of fiduciary claim could be premised on "the purposeful direction of material omissions to the forum state." *Wien Air Alaska,* 195 F.3d at 213. Similarly, in this case, Plaintiff's allegations of purposeful direction of material omissions to the forum state are sufficient to establish a *prima facie* case of personal jurisdiction over Defendants.

### B. Misappropriation of Trade Secrets

Plaintiff contends that Defendants misappropriated the business models, business plans, and other trade secrets of Plaintiff for their own use and benefit. In his affidavit, Hardy states that he shared these trade secrets with Defendants during the phone conversations between Defendants and Hardy, while Hardy was located in Texas, and that Donahue traveled to Texas to discuss Plaintiff's business plans for the new company to be formed with Stelax UK's assets.

In *Alpine Plastics, Inc. v. Erlstedt,* the court asserted personal jurisdiction over the defendants with respect to the plaintiff's claim for misappropriation of trade secrets where (1) the defendants, customers of the plaintiff, traveled to Louisiana, (2) the plaintiff shared trade secrets with the defendants while they were in Louisiana, and (3) the defendants used the trade secrets to open a competitive business in North Carolina. *Alpine Plastics, Inc. v. Erlstedt,* No. 03-1639, 2003 WL 22174288, at *6 (E.D.La. Sept.17, 2003). The court found significant that the defendants (1) "came to Louisiana with the intent to misappropriate the trade secrets," (2) "actually accomplished the misappropriation in Louisiana," and (3) knew "specifically that the misappropriation would cause the brunt of its harm in Louisiana." *Id.* Similarly, in this case, Plaintiff has alleged that (1) the individual Defendants purposely communicated with Hardy in Texas in order to misappropriate Plaintiff's trade secrets, (2) the individual Defendants accomplished the misappropriation in communications with Hardy in Texas, and (3) Defendants knew that the misappropriation would cause harm in Texas, where Plaintiff is headquartered. Therefore, to the extent Plaintiff's claim for misappropriation of trade secrets is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 4
Not Reported in F.Supp.2d, 2004 WL 733844 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

premised on the misappropriation of secrets learned in phone conversations between the individual Defendants and Hardy, while Hardy was in Texas, Plaintiff has established a *prima facie* case for jurisdiction with respect to all Defendants. Additionally, Plaintiff alleges that Donahue, on behalf of Alder, traveled to Texas to discuss Plaintiff's plans for the new company to be formed with Stelax UK's assets. Therefore, with this additional contact, Plaintiff has established a *prima facie* case for jurisdiction over Alder with respect to a claim for misappropriation of trade secrets that Donahue learned while he was physically present in Texas.

### C. Conversion

**\*5** Plaintiff contends that Defendants converted the 170,000 shares of Plaintiff's stock alleged to have been transferred to Donahue to be used as collateral for any funding obtained and the 118,000 shares alleged to have been deposited in Gibson's personal trading account as a good faith gesture for consummation of the contract. Plaintiff further contends that Defendants converted Plaintiff's proprietary information and property, including business plans and financial statements.

The allegation of conversion of proprietary information is premised on the same conduct allegedly establishing a misappropriation of trade secrets claim and is subject to the same analysis. Defendants allegedly communicated with Hardy in Texas, with the intent of learning trade secrets and converting them for their own benefit. Therefore, like Plaintiff's claim for misappropriation of trade secrets, Plaintiff has established a *prima facie* case for jurisdiction over all Defendants to the extent Plaintiff's claim is premised on the conversion of secrets learned in phone conversations between Defendants and Hardy, while Hardy was in Texas. Further, because Donahue, on behalf of Alder, allegedly traveled to Texas to learn Plaintiff's plans for the new company to be formed with Stelax UK's assets, Plaintiff has established a *prima facie* case for jurisdiction over Alder with respect to a claim for conversion of secrets that Donahue learned while he was physically present in Texas.

The conversion allegation premised on Donahue and Gibson's continued possession of Plaintiff's stock fares differently. There is no evidence nor are there allegations that Defendants' continued possession of Plaintiff's stock is related to Defendants'

communications with Texas nor that the stock is held in Texas accounts. Therefore, Plaintiff has failed to establish a *prima facie* case for jurisdiction with respect to Plaintiff's claim for conversion of stock.

### D. Breach of Fiduciary Duty

To the extent Plaintiff's breach of fiduciary duty claim is premised on Defendants' intentional failure, during phone conversations with Hardy, while Hardy was in Texas, to disclose that Donahue held a position with Alder or that Alder intended to attempt to purchase the Stelax UK assets for itself, the minimum contacts analysis mirrors that of Plaintiff's fraud claim. Plaintiff has established a *prima facie* case for jurisdiction because Defendants' allegedly intentional, tortious conduct caused foreseeable harm in Texas and because Plaintiff's intentional tort cause of action arises from Defendants' communications with Texas. *Panda Brandywine Corp., 253 F.3d at 869; Wien Air Alaska,* 195 F.3d at 213. Further, to the extent Plaintiff's breach of fiduciary duty claim is premised on an alleged misuse of secrets learned in phone conversations between the individual Defendants and Hardy, while Hardy was in Texas, the minimum contacts analysis mirrors that of the misappropriation of trade secrets and conversion claims, and Plaintiff has established a *prima facie* case for jurisdiction with respect to all Defendants as to such claims. Additionally, to the extent Plaintiff's breach of fiduciary duty claim against Alder is premised on the alleged misuse of secrets that Donahue learned while he was physically present in Texas, the minimum contacts analysis mirrors that of the misappropriation of trade secrets and conversion claims, and Plaintiff has established a *prima facie* case for jurisdiction with respect to Alder. However, to the extent Plaintiff's breach of fiduciary duty claim is premised on Defendants' attempt to buy Stelax UK's assets, Plaintiff has failed to establish a *prima facie* case for jurisdiction. Although it is foreseeable that the harm resulting from that conduct would be felt in Texas, the foreseeability of harm in the forum is alone insufficient to establish minimum contacts. *Panda Brandywine Corp., 253 F.3d at 869.*

### E. Breach of Contract

**\*6** To determine whether a party has purposefully availed itself of a forum in a breach of contract case, the Court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5
Not Reported in F.Supp.2d, 2004 WL 733844 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

dealing." *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir.1999). Plaintiff contends that Defendants breached their contract to facilitate Plaintiff's purchase of Stelax UK's assets. In his affidavit, Hardy states that the terms of the agreement between Stelax and Alder were discussed during telephone conversations between Defendants and Hardy, while Hardy was in Texas, that Hardy received correspondence in Texas regarding the terms of the agreement, and that Donahue traveled to Texas to discuss the terms of the agreement. However, the assets sought to be purchased as a result of the contract were located in the United Kingdom, and the funds were to be ultimately paid to the Stelax UK Receiver in the United Kingdom. Here, the communications to Texas rested on the "mere fortuity" that Hardy was located in Texas. *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 778 (5th Cir.1986). Therefore, the Court finds that Plaintiff has failed to establish a *prima facie* case for jurisdiction over Plaintiff's breach of contract claim, and the Court dismisses Plaintiff's breach of contract claim for lack of personal jurisdiction.

### F. Tortious Interference with Prospective Contractual Relations

Plaintiff contends that Defendants intentionally interfered with Plaintiff's prospective contract with the Receiver of Stelax UK by attempting to purchase the assets for themselves. Although it is foreseeable that Defendants' intentional tort would cause harm in Texas, as stated above, foreseeable effects alone without more are insufficient to establish minimum contacts. *Panda Brandywine Corp.,* 253 F.3d at 869. Here, the prospective contract allegedly interfered with involved the sale of assets located in the United Kingdom. The allegedly tortious act of interference involved Defendants' contact with the Stelax UK Receiver in the United Kingdom. Because Plaintiff has not shown that Defendants should "reasonably anticipate being haled into court" in Texas based on this conduct, Plaintiff has failed to establish a *prima facie* case for jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 486, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

### G. Conspiracy

Civil conspiracy is defined as "a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means." *Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex.1996). Conspiracy is a derivative tort that depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. *Id.* Therefore, to the extent Plaintiff's conspiracy claim is premised on the underlying torts over which the Court does not have personal jurisdiction, Plaintiff's conspiracy claim similarly must be dismissed. However, to the extent Plaintiff's conspiracy claim is premised on one of the torts for which Plaintiff has established the requisite minimum contacts, the same contacts establish a *prima facie* case for jurisdiction with respect to Plaintiff's claim of conspiracy.

### H. Fiduciary Shield Doctrine

*7 Defendants argue that, even if the individual Defendants' acts constitute minimum contacts with Texas, the Court "cannot assert personal jurisdiction over individuals whose contacts with the forum state arise while acting as corporate officers, unless the corporate entity can be disregarded to reach the individual." Albeit not by name, Defendants are invoking the "fiduciary shield doctrine."

The fiduciary shield doctrine encompasses two rules: (1) jurisdiction over an individual cannot be predicated solely on the individual's employer's activities in the forum, and (2) an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over the individual unless the court is willing to disregard the corporate entity. *See Stuart v. Spademan,* 772 F.2d 1185, 1196-97 (5th Cir.1985). Defendants, citing *Stuart,* rely on the second prong of the fiduciary shield doctrine. However, although the Fifth Circuit in *Stuart* discusses both prongs of the doctrine, the Court's holding relates to the plaintiffs' contention that the district court erred by failing to attribute the corporate entity's contacts with Texas to the corporate officer in his individual capacity. *Id.* at 1196. In fact, in *Stuart,* the Fifth Circuit applied only the first prong of the fiduciary shield doctrine.

One year prior to *Stuart,* the Supreme Court in *Calder* rejected the second prong of the fiduciary shield doctrine in the context of an intentional tort:
Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually. In this case, petitioners are primary participants in an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 6
Not Reported in F.Supp.2d, 2004 WL 733844 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis. *Calder, 465 U.S. at 791*.

Further, in *Donovan v. Grim Hotel Co.,* decided after *Calder* and prior to *Stuart,* the Fifth Circuit stated: "Nor is due process offended when a non-resident corporate agent or employee is made subject to personal jurisdiction in the forum state for a foreseeable consequence therein of his personal act performed elsewhere, although allegedly performed only as a corporate functionary." *Donovan v. Grim Hotel Co., 747 F.2d 966, 974 (5th Cir.1984)*. Thus, the *dicta* in *Stuart* that fails to mention *Calder'* s limit on the second prong of the fiduciary shield doctrine does not insulate Defendants from personal jurisdiction if they engaged in intentional, tortious acts purposefully directed toward Texas. *Bumgarner v. Crump, 809 F.Supp. 461, 464 (S.D.Miss.1993)* ("[I]f Crump purposefully directed the activities at issue to Mississippi, even if solely in the course of his employment, then Crump would have contacts with Mississippi sufficient to support an assertion by Mississippi of personal jurisdiction over him."). Because Plaintiff has only established a *prima facie* case of jurisdiction with respect to alleged intentional tortious acts by Defendants, the Court need not consider the extent to which the fiduciary shield doctrine would insulate Defendants from personal jurisdiction based on their non-intentional acts committed while acting as corporate officers.

### I. Fairness Factors

**\*8** "Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Wien Air Alaska,* 195 F.3d at 215. The interests to balance in this determination are "the burden on the defendant having to litigate in the forum, the forum state's interests in the lawsuit, the plaintiff's interests in convenient and effective relief, the judicial system's interest in efficient resolution of controversies, and the state's shared interest in furthering fundamental social policies." *Id.* To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, a defendant must make a "compelling case" against it. *Wien Air Alaska,* 195 F.3d at 215 (quoting *Burger King, 471 U.S. at 477).* Here, three factors weigh in favor of Texas's assertion of personal jurisdiction. First, Defendants have not argued that they would be burdened by having to litigate in this forum. Second, Texas has an interest in whether Defendants have

committed intentional, tortious acts directed to Plaintiff, whose principal place of business is in Texas. Third, Plaintiff has an interest in this case proceeding in Texas where Plaintiff is headquartered. One factor weighs against Texas's assertion of personal jurisdiction. Since the Court lacks personal jurisdiction over Defendants with respect to some of the claims asserted, those claims must be pursued in another forum, and it is not an efficient resolution of the controversies between Plaintiff and Defendants for the litigation between the same parties to be pursued in multiple fora. However, the balance of these factors shows that Defendants have not made a "compelling case" that the exercise of jurisdiction offends traditional notions of fair play and substantial justice. Therefore, to the extent Plaintiff has established a *prima facie* case of minimum contacts over Defendants with respect to a claim, the Court will assert personal jurisdiction over Defendants.

### J. Pendent Personal Jurisdiction

As noted in the preceding paragraph, the Court recognizes that the interests of efficiency and economy would be better served if all of Plaintiff's claims and Defendants' counterclaims related to this set of alleged facts were pursued in the same action. Some courts have suggested that, once a court has established personal jurisdiction with respect to one claim, it might be appropriate to exercise personal jurisdiction over claims arising from a common nucleus of operative facts. *See Data Disc., Inc. v. Sys. Tech. Assoc., Inc., 557 F.2d 1280, 1289 n. 8 (9th Cir.1977)* ("[I]f the court determines that there has been a sufficient showing of personal jurisdiction to reach trial with regard to one claim, but not the other, it may or may not be appropriate to assume jurisdiction over the other claim under principles analogous to the doctrine of pendent jurisdiction."); *Nat'l "Write Your Congressman" Club, Inc. v. Jackson,* No. 3:96-CV-1288-D, 1996 WL 707013, at *3 (N.D.Tex. Dec.4, 1996)* ("Because the court possesses jurisdiction over Jackson with respect to National's tort claims, it also has personal jurisdiction over Jackson with respect to National's breach of contract claim.... The court need not decide in this case whether this concept is best understood under the rubric 'pendent personal jurisdiction,' which holds that a court has jurisdiction over any claim that arises out of a common nucleus of facts with claims as to which personal jurisdiction exists.").

**\*9** For example, in *Hargrave v. Oki Nursery, Inc.,* the Second Circuit interpreted 28 U.S.C. § 1332 as

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 7
Not Reported in F.Supp.2d, 2004 WL 733844 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

authorizing the assertion of personal jurisdiction over claims that were not within the New York long-arm statute but shared a common nucleus of operative facts with claims that were within the long-arm statute. *Hargrave v. Oki Nursery, Inc., 646 F.2d 716 (2d Cir.1980)*. However, in *Hargrave,* the court explicitly recognized that the assertion of pendent personal jurisdiction comported with the requirements of due process because "defendant clearly had sufficient contacts with New York to justify subjecting it to the entire action in New York." *Id.* at 718. In contrast, the Texas long-arm statute extends to the limits of due process. *Revell, 317 F.3d at 470*. Therefore, the exercise of pendent personal jurisdiction in this case would not comport with the requirements of due process. *See* 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 3d § 1069.7 (2002) ("[I]t would be unconstitutional for a state pendent personal jurisdiction policy to capture claims that fall outside of the Fourteenth Amendment's due process limits on the state's long-arm statute itself.")

### K. Conclusion

The Court grants in part and otherwise denies Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. All of Plaintiff's claims against Defendants Alder Trading Corporation, Neil Gibson, William Woolstencroft, David Perry, and John Matias, Jr., are dismissed without prejudice for lack of personal jurisdiction except the following: (1) Plaintiff's fraud and breach of fiduciary duty claims to the extent they are premised on Defendants' failure to disclose during phone conversations with Hardy, while Hardy was in Texas, that Donahue held a position with Alder or that Alder intended to attempt to purchase the Stelax UK assets for itself; (2) Plaintiff's misappropriation, conversion, and breach of fiduciary duty claims to the extent they are premised on the misuse of secrets learned in phone conversations between the individual Defendants and Hardy, while Hardy was in Texas; (3) Plaintiff's misappropriation, conversion, and breach of fiduciary duty claims against Alder premised on the misuse of secrets learned by Donahue when he traveled to Texas to discuss Plaintiff's plans for the new company to be formed with Stelax UK's assets; and (4) Plaintiff's conspiracy claim to the extent it is premised on conspiracy to commit the aforementioned torts.

The Court recognizes that this ruling does not promote the interests of efficiency or economy and

encourages the parties to consider whether one of the following solutions would better serve those interests: (1) Plaintiff should consider moving to dismiss without prejudice the claims that remain pending in this court and filing a new lawsuit in a forum where all of the claims against all Defendants can be tried together; or (2) Defendants should consider waiving their contest to personal jurisdiction with respect to the claims dismissed in this Order so that Defendants will not be forced to defend Plaintiff's claims in two fora. The parties shall by April 2, 2004 confer and submit a brief joint report detailing whether the parties have devised a solution that better promotes the interests of efficiency and economy.

### II. MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT

**\*10** On March 19, 2003, Plaintiff filed Plaintiff's Original Petition in state court in Dallas County, Texas, and on May 1, 2003, Defendant William Donahue filed his Original Answer. On May 2, 2003, Donahue removed this action to federal court, with the consent of his co-Defendants. However, his co-Defendants failed to answer. On August 15, 2003, Plaintiff filed a Motion for Partial Default Judgment against the non-answering Defendants. On August 19, 2003, the Clerk of Court entered default under Federal Rule of Civil Procedure 55(a) against Defendants Alder Trading Corporation, Neil Gibson, William Woolstencroft, David Perry, and John Matias, Jr. On August 21, 2003, the non-answering Defendants filed a Response to Plaintiff's Motion for Default Judgment, and on September 9, 2003, the non-answering Defendants filed a Motion to Set Aside Clerk's Entry of Default.

Under Federal Rule of Civil Procedure 55(c), a clerk's entry of default may be set aside "for good cause shown." When determining whether good cause exists, the Court should examine (1) whether the default was willful, (2) whether setting the default aside would prejudice the adversary, and (3) whether a meritorious defense is presented. *CJC Holdings, Inc. v. Wright & Lato, Inc., 979 F.2d 60, 64 (5th Cir.1992)*. Here, the non-answering Defendants first contend that they failed to answer because they were under the mistaken impression that they were being represented by the attorney who at that time represented Defendant Donahue. On August 20, 2003, upon learning of Plaintiff's motion for default judgment, Defendants immediately hired counsel. Defendants' counsel quickly responded to Plaintiff's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 733844 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

motion for default judgment and moved to set aside the clerk's entry of default. The Court finds that Defendants' default was not willful. Second, although the Court recognizes that this action has been pending since March 19, 2003, Plaintiff is no more prejudiced by the Court's setting aside the clerk's entry of default than any plaintiff would be in a case with a clerk's entry of default. Defendants' Motion to Set Aside Clerk's Entry of Default has been pending since September 9, 2003. Had the Court's docket allowed the Court to rule sooner on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Defendants' Motion to Set Aside Clerk's Entry of Default, the prejudice to Plaintiff resulting from delay in the disposition of such motions would have been even more modest. That delay is not the result of the parties' conduct. Further, in light of the Court's dismissal of many of Plaintiff's claims for lack of personal jurisdiction, Plaintiff's prejudice with respect to those claims results principally from the Court's ruling on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, rather than from the Court's ruling on Defendants' Motion to Set Aside Clerk's Entry of Default. Third, Defendants contest the substance and frequency of conversations with Hardy and whether Donahue held a position with Alder. Since these alleged conversations and the alleged fraudulent omissions therein form the basis of the remaining claims in this suit, the Court finds that Defendants have asserted a potentially meritorious defense to Plaintiff's claims. Therefore, the Court finds good cause under Federal Rule of Civil Procedure 55(c) to set aside the default and thus directs the Clerk of Court to set aside the Clerk's Entry of Default entered on August 19, 2003.

### III. MOTION FOR PARTIAL DEFAULT JUDGMENT

*11 In light of the Court's ruling on the Motion to Set Aside Clerk's Entry of Default, the Court denies Plaintiff's Motion for Partial Default Judgment. The Court notes that, even if the Court had not found good cause to set aside the clerk's entry of default, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." Ganther v. Ingle, 75 F.3d 207, 212 (5th Cir.1996). Rather, the decision to enter a default judgment is discretionary. 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 3d § 2685 (1998). In addition to the factors discussed in the preceding paragraph, the Court may also consider the amount of money at stake, the possibility of a dispute concerning material

facts, and the strong policy favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir.1986); 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 3d § 2685 (1998). For each of the claims remaining in this suit after the Court's ruling on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Plaintiff asserts damages "in excess of the minimum jurisdictional limits of this Court." Additionally, Defendants dispute the material facts underlying the claims remaining in this suit. Finally, the Court recognizes the strong policy favoring decisions on the merits. Therefore, even if the Court had not found good cause to set aside the clerk's entry of default, the Court, in the exercise of its discretion, would not have entered a default judgment against the non-answering Defendants.

Finally, the non-answering Defendants, through their neglect, caused Plaintiff to expend attorneys' fees pursuing a default judgment against them. The Court orders the non-answering Defendants, Alder Trading Corporation, Neil Gibson, William Woolstencroft, David Perry, and John Matias, Jr., to reimburse Plaintiff for these fees. See Nilsson, Robbins, Dalgarn Berliner, Carson & Wurst v. La. Hydrolec, 854 F.2d 1538, 1546 (9th Cir.1988) (holding that the district court did not abuse its discretion by conditioning the setting aside of a default on the reimbursement of the plaintiff's attorneys' fees); Corso v. First Frontier Holdings, Inc., 205 F.R.D. 420, 421 (S.D.N.Y.2001) (setting aside the entry of default and ordering the defaulting defendants to reimburse the plaintiff for the attorneys' fees related thereto); 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure 3d § 2700 (1998) (discussing the court's inherent power to condition the setting aside of entries of default). Plaintiff shall by April 2, 2004 submit evidence of the attorneys' fees expended on all briefing and oral argument related to Plaintiff's Motion for Partial Default Judgment and Defendants' Motion to Set Aside Clerk's Entry of Default. The non-answering Defendants shall by April 9, 2004 file any objections to the fees sought to be recovered by Plaintiff.

*12 Plaintiff shall by April 9, 2004 serve and file a Second Amended Complaint limited to the claims remaining in this lawsuit. The non-answering Defendants shall serve and file a responsive pleading within 20 days after the Second Amended Complaint is filed. In addition, in light of the pendency of the motions addressed in this Order, the Court's Scheduling Order, entered on August 13, 2003, must be revised. The parties shall by April 30, 2004 meet

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 9
Not Reported in F.Supp.2d, 2004 WL 733844 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

and discuss the scheduling issues highlighted in the Court's May 7, 2003 Order, a copy of which is attached to this Order. The parties shall file a Joint Report by May 7, 2004 containing the parties' proposed deadlines for a new Scheduling Order to be entered in this case.

SO ORDERED.

### ORDER REQUIRING SCHEDULING CONFERENCE AND REPORT FOR CONTENTS OF SCHEDULING ORDER

Pursuant to <u>Fed.R.Civ.P. 16(b)</u>, Rule 26, and the Court's Civil Justice Expense and Delay Reduction Plan (the "Plan"), the Court enters this Order to promote possible early settlement of this action and to facilitate subsequent entry of a Scheduling Order. This Order is being sent to all counsel and unrepresented parties who have appeared. *If there are other defendants who have not appeared, but who have been in contact with the plaintiff or plaintiff's counsel, then the plaintiff's counsel (or the plaintiff if the plaintiff is unrepresented) is responsible for contacting such defendants and making every effort to ensure their meaningful participation in the conference.*

### I.

Lead counsel for each party (or a designee attorney with appropriate authority) and any unrepresented party (except for a prisoner litigant proceeding *pro se*) shall confer as soon as practicable, but in any event no later than June 4, 2003 to confer (the "Scheduling Conference") and consider (1) the nature and basis for their claims and defenses; (2) the possibilities for a prompt resolution of the case; (3) to make or arrange for the disclosures required by <u>Fed.R.Civ.P. 26(a)(1)</u> and to prepare the report described below. It is the Court's belief that a personal face-to-face meeting is usually the most productive type of conference, but the Court will leave to the professionalism of the parties a determination of the form for the Scheduling Conference. As a result of the Scheduling Conference, counsel shall prepare and submit a Report Regarding Contents of Scheduling Order ("Joint Report"). The Joint Report shall also include a status report on settlement negotiations but shall not disclose settlement figures.

### II.

The Joint Report, which shall be filed on or before June 18, 2003, shall include the following in separate numbered paragraphs (but NOT in a proposed Order format):

(1) A brief statement of the claims and defenses;

(2) A proposed time limit to file motions for leave to join other parties;

(3) A proposed time limit to amend the pleadings;

(4) Proposed time limits to file various types of motions, including dispositive motions (NOTE: The dispositive motion deadline cannot be less than 90 days before trial; the Court prefers 120 days);

*13 (5) A proposed time limit for initial designation of experts;

(6) A proposed time limit for responsive designation of experts;

(7) A proposed time limit for objections to experts (i.e. *Daubert* and similar motions);

(8) A proposed plan and schedule for discovery, a statement of the subjects on which discovery may be needed, a time limit to complete factual discovery and expert discovery, and a statement of whether discovery should be conducted in phases or limited to or focused upon particular issues;

(9) What changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed;

(10) A proposed trial date, estimated number of days required for trial and whether a jury has been demanded;

(11) A proposed date for further settlement negotiations;

(12) Objections to <u>Fed.R.Civ.P. 26(a)(1)</u> asserted at the Scheduling Conference, and other proposed modifications to the timing, form or requirement for disclosures under <u>Rule 26(a)</u>, including a statement as to when disclosures under <u>Rule 26(a)(1)</u> were made or will be made;

(13) Whether the parties will consent to trial (jury or non-jury) before U.S. Magistrate Judge Paul D. Stickney (consent form attached);

(14) Whether the parties are considering mediation or arbitration to resolve this litigation and a statement of when it would be most effective (e.g., before discovery, after limited discovery, after motions are filed, etc.), and, if mediation is proposed, the name of any mediator the parties jointly recommend to mediate the case;

(15) Any other proposals regarding scheduling and discovery that the parties believe will facilitate expeditious and orderly preparation for trial;

(16) Whether a conference with the Court is desired; and

(17) Any other matters relevant to the status and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 733844 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

disposition of this case, including any other Orders that should be entered by the Court under R. 16(b) and (c) and 26(c).

The filing of the Joint Report is mandatory. All parties shall endeavor to prepare joint suggestions, but if they cannot agree, the Joint Report shall reflect their respective views. In such a case, the Joint Report shall set forth with each party's respective recommendation a statement of why agreement could not be reached. The names of any persons named in the case who did not participate in the conference shall be identified in the Joint Report.

III.

Unless plaintiff is unrepresented, lead counsel for plaintiff is responsible for initiating contact with opposing counsel and all unrepresented parties for the purpose of arranging the Scheduling Conference and preparing the Joint Report. Lead counsel for all parties and unrepresented parties are equally responsible for seeing that this Order is complied with in a timely manner. At least one counsel for each party and all unrepresented parties shall sign the Joint Report prior to filing.

IV.

Because pursuant to Fed.R.Civ.P. 16(b), the Court is to enter a Scheduling Order "as soon as practicable but in any event within 90 days after the appearance of a defendant and within 120 days after the complaint has been served on a defendant," any request for an extension of time to file the Joint Report shall be denied, absent a showing of good cause.

V.

*14 Unless a scheduling conference with the Court is set, a Scheduling Order will be issued following the Court's review of the Joint Report. Once the Scheduling Order has been issued, extension of the trial date will not be granted absent extraordinary circumstances. Without filing a motion, the parties may agree to the extension of any date in the Scheduling Order except for the dispositive motion deadline, pretrial material filing deadline, pretrial conference date and trial date; provided, however, that no extensions will be given effect by the Court

unless the Court receives prompt written notice confirming the existence of the extension.

VI.

Unless this is an action exempted by Fed.R.Civ.P. 26(a)(1)(E), or objection to disclosure is asserted at the Scheduling Conference, in good faith, as provided in Fed.R.Civ.P. 26(a)(1), the parties must make the disclosures described in Fed.R.Civ.P. 26(a)(1) within fourteen days of the date set out in Paragraph I hereof.

IT IS SO ORDERED.

N.D.Tex.,2004.
Stelax Industries, Ltd. v. Donahue
Not Reported in F.Supp.2d, 2004 WL 733844 (N.D.Tex.)

Briefs and Other Related Documents (Back to top)

• 3:03cv00923 (Docket) (May. 02, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.