IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DVH COMPANIES, INC.,<br>D/B/A SOUTHWEST WHEEL COMPANY,<br>AND D/B/A ETRAILERPART.COM, | § § § § | |
| Plaintiff | § § | Civil Action No. 3-06CV2084-P |
| vs. | § § | |
| BROPFS CORPORATION<br>D/B/A ETRAILER.COM, | § § § | |
| Defendant. | § § | |

## DEFENDANT'S SECOND COMPENDIUM OF UNREPORTED CASES CITED IN ITS REPLY MEMORANDUM IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT

1. *Goldstein v. Gordon*, No. 200CV0022P, 2002 WL 324289 (N.D. Tex. Feb. 27, 2002) (Solis, J.)

2. *Nelson v. Star Enter.*, No. 99-30976, 2000 WL 960513 (5th Cir. June 15, 2000)

3. *MOK v. Dunkin' Donuts*, No. 05-92-02557-CV, 1993 WL 74740 (Tex.App.—Dallas, writ denied)

Dated: January 12, 2007

Respectfully submitted,

PATTON BOGGS LLP

_/s/ Talcott J. Franklin_
Talcott J. Franklin
State Bar No. 24010629
2001 Ross Avenue, Suite 3000
Dallas, Texas 75201
Phone: (214) 758-1500
Fax: (214) 758-1550

OF COUNSEL:

Cathy J. Futrowsky
Gallop, Johnson & Neuman, L.C.
101 Constitution Avenue, N.W.
Suite 675 East
Washington, D.C. 20001
Telephone: (202) 682-0707

*Attorneys for Defendant/Counterclaim Plaintiff
Bropfs Corporation d/b/a etrailer.com*

## CERTIFICATE OF SERVICE

This is to certify that the above and foregoing was served upon all counsel of record (listed below) by notice of electronic filing, pursuant to Fed. R. Civ. P. 5(b)(2)(D), today, January 12, 2007.

Pieter J. Tredoux
901 Main Street
Suite 6300
Dallas, Texas 75202
214-712-9291 (telephone)
214-712-5690 (telecopier)

and

Scott T. Griggs
Dennis T. Griggs
Griggs Bergen LLP
Bank of America Plaza
901 Main Street
Suite 6300
Dallas, Texas 75202
214-653-2400 (telephone)
214-653-2401 (telecopier)

　　　　　　　　　　　　　　　　　　/s/ Talcott J. Franklin
　　　　　　　　　　　　　　　　　　Talcott J. Franklin

# TAB 1

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 324289 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

C
Briefs and Other Related Documents
Goldstein v. GordonN.D.Tex.,2002.Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.
Robert N. GOLDSTEIN, Plaintiff,
v.
Philip Alexander GORDON and www.cheaters.com, Defendants.
No. Civ.A. 300CV0022P.

Feb. 27, 2002.

*MEMORANDUM OPINION AND ORDER*
SOLIS, J.
*1 Now before the Court are:
1. Defendant cheaters.com's Motion to Set Aside **Default Judgment** for Lack of *in rem* Jurisdiction and to Dismiss under Fed.R.Civ.P. 12(b)(2) and (5), filed April 4, 2001; FN1 and

FN1. Plaintiff Robert N. Goldstein filed his response brief on April 24, 2001. Defendant cheaters.com filed its reply brief on May 9, 2001.

2. Defendants' Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure, filed June 19, 2001.FN2

FN2. Plaintiff Robert N. Goldstein filed his response brief on July 9, 2001. Defendants filed their reply brief on July 24, 2001.

*PROCEDURAL HISTORY*

On or about January 2, 1998, Defendant Gordon registered the domain name "cheaters.com" with Network Solutions, Inc., an internet domain name registrar and database company. (*See* Pl.'s First Am. Compl. ¶ 12.) On January 6, 2000, Plaintiff Robert N. Goldstein ("Plaintiff") filed this lawsuit against Defendant Philip Alexander Gordon ("Defendant Gordon") for engaging in unfair competition under the Lanham Act. (*See generally* Pl.'s Compl.) On January 6, 2000, the United States District Court for the Northern District of Texas issued a summons to Defendant Gordon at an address in Canada. (*See* Def.'s App. at 24.) The summons was never served on Defendant Gordon and the Return of Service was never received by the Court.

On March 31, 2000, Plaintiff filed his First Amended Complaint and added the domain name "www.cheaters.com" as a defendant to the action. (*See generally* Pl.'s First Am. Compl.) Plaintiff asserts in his First Amended Complaint that he had been unable, after an "exhaustive and diligent search," to locate Defendant Gordon. (*See id.* ¶ 6.) Moreover, Plaintiff contends, the Court does not have personal jurisdiction over Defendant Gordon. (*See id.*) Therefore, Plaintiff urged the Court to proceed *in rem* against the domain name itself pursuant to 15 U.S.C. § 1125(d)(2)(A), which is the Anticybersquatting Consumer Protection Act ("ACPA") (*See id.* ¶ 7.) Plaintiff alleged that Defendant Gordon had illegal ownership of and was illegally using the domain name "www.cheaters.com." (*See* Def.'s App. at 44.)

On April 4, 2000, the United States District Court for the Northern District of Texas issued a summons to Defendant cheaters.com c/o Network Solutions, Inc. in Herndon, Virginia. (*See id.* at 36.) The summons was never served on Defendant cheaters.com and the Return of Service was never received by the Court. As of May 19, 2000, neither Defendant Gordon nor Defendant cheaters.com had been served with process. (*See id.* at 44.)

On May 3, 2000, Plaintiff filed a document entitled "Consent Motion to Deposit Registrar Certificate into the Registry of the Court." (*See id.* at 42.) In the motion, Plaintiff represented that "[t]he parties" were seeking to tender control of the domain name registration and use of www.cheaters.com into the Court Registry. (*See id.*) However, the only party who consented to the motion was Plaintiff-neither defendant had signed the pleading. (*See id.* at 42.) Interestingly, despite Plaintiff's contention that he had been unable to locate Defendant Gordon, Plaintiff attached a Registrar Certificate to the "Consent Motion" that listed Defendant Gordon's address as 133 Washington Boulevard # 355, Marina del Ray, California 90292. (*See id.* at 39.)

*2 On May 19, 2000, Plaintiff filed a Motion for a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 324289 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

Finding of No Personal Jurisdiction over Defendant Phillip [sic] Alexander Gordon. (*See id.* at 44-46.) In the motion, Plaintiff sought to have the Court declare, pursuant to § 1125(d)(2)(B), that service of process was proper as to Defendant cheaters.com because Plaintiff could not obtain personal jurisdiction over Defendant Gordon. (*See id.*) The Court entered an order granting the motion on May 30, 2000.

On June 28, 2000, Plaintiff sought entry of a **default judgment** against Defendant cheaters.com that would entitle Plaintiff to ownership of the domain name. (*See* Def.'s App. at 48-49, 51-52.) A **default judgment** against cheaters.com was entered that same day and consequently, Network Solutions, Inc. transferred ownership of the domain name "www.cheaters.com" to Plaintiff. (*See* Def.'s Mot. at 4; Def.'s App. at 50, 53) Plaintiff is now listed by Network Solutions, Inc. as the registrant of "www.cheaters.com." (*See* Def.'s Mot. at 4.)

Nine months later, Defendant cheaters.com filed this Motion to Set Aside **Default Judgment** and contends that the **default judgment** is void. Defendant Gordon, in his capacity as registrant of the domain name cheaters.com and the legal representative of Defendant cheaters.com at the time of the entry of the **default judgment**, contests the invocation of *in rem* jurisdiction over Defendant cheaters.com and seeks to have the **default judgment** set aside, and the action against him and cheaters.com dismissed for lack of personal and *in rem* jurisdiction.

DISCUSSION

I. MOTION TO SET ASIDE **DEFAULT JUDGMENT**.

A. Legal Standard.

**Default judgments** are not favored by the law because courts encourage trials on the merits. *See* 10A Wright and Miller, Federal Practice and Procedure § § 2692-93 (1998). In fact, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir.2001). In ruling on a motion to set aside **default judgment**, a court should resolve all doubts in favor of the party seeking relief from the judgment. *See Davis v. Parkhill-Goodloe Co.*, 302 F.2d 489, 495 (5th Cir.1962); *General Tel. Corp. v. General Tel. Answering Service*, 277 F.2d 919, 921 (5th Cir.1960). A motion to set aside a **default judgment** is addressed to the sound discretion of the district court. *See McGrady v. D'Andrea Elec., Inc.*, 434 F.2d 1000, 1001 (5th Cir.1970).

Rule 60(b) of the Federal Rules of Civil Procedure allows a court to relieve a party or its representative from any judgment, including a **default judgment**, on the basis of (1) fraud, misrepresentation, or misconduct of the adverse party; (2) the judgment being void; or (3) any other reason justifying relief from the judgment. *See* Fed.R.Civ.P. 60(b). To prevail on a motion to set aside **default judgment**, a defendant must also show "good cause." *See CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir.1992); *Meaux Services, Inc. v. Dao*, 160 F.R.D. 563, 564 (E.D.Tex.1995). Courts in the Fifth Circuit uniformly consider the following factors when determining whether good cause exists: whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented. *Id.* These factors are not "talismanic," and the Court may consider others. *Id.* [FN3]

FN3. An additional factor that generally influences a court's exercise of discretion is its assessment of the parties' good faith or lack thereof. *See* 10A Wright & Miller, Federal Practice and Procedure § 2693. For instance, when a party appears unduly anxious to win by default, the court may be generous toward the party moving for relief. *Id.* "On the other hand, when the nondefaulting party endeavors to encourage the other party to respond, provides sufficient opportunity for the opponent to correct the default, or does not press too rapidly for the entry of the default and the subsequent judgment, a court typically will conclude that there is no reason to give the defaulting party relief." *Id.*

Plaintiff identified cheaters.com as a defendant in his Amended Complaint, dated March 31, 2000. On May 19, 2000 Plaintiff sought dismissal of Defendant Gordon, a necessary act for the *in rem* action against cheaters.com to stand. *See* 15 U.S.C. § 1125(d)(2)(A). On May 30, 2000, the Court granted Plaintiff's motion to dismiss Defendant Gordon; an act that the Court believed constituted service of process on Defendant cheaters.com pursuant to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Plaintiff's representations and in accordance with § 1125. Defendant cheaters.com thus had 20 days from May 30, 2000 to answer the amended complaint in accordance with Federal Rule 12(a). On June 28, 2000, a mere eight days after the expiration of the answer deadline, Plaintiff sought a **default judgment** against Defendant cheaters.com. This immediate action could be interpreted as constituting bad faith in seeking the **default judgment**.

B. Void Judgment.

*3 Defendant contends the Court should set aside the **default judgment** because the judgment is void. (*See* Def.'s Mot. at 4-5.) Courts look to two factors to determine voidness: (1) whether the court lacks jurisdiction over the subject matter or the parties or (2) if the court acted in a manner inconsistent with due process. *See Carter v. Fenner,* 136 F.3d 1000, 1006 (5th Cir.1998). Defendant contends that the **default judgment** should be rendered void and set aside because the Court lacked *in rem* jurisdiction over Defendant cheaters.com.

The ACPA provides two avenues for suing a defendant in a trademark action. A trademark owner may proceed "either *in personam* against an infringer, or in certain circumstances where this cannot be done, the owner may proceed *in rem* against the domain name; a mark owner may not proceed against both at the same time." *Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.Com,* 128 F.Supp.2d 340, 344 (E.D.Va.2001). A trademark owner may file an *in rem* cause of action only where the court finds that the owner of the mark (a) is not able to obtain *in personam* jurisdiction over a person who would have been a defendant in the action or (b) through due diligence was not able to locate the person who would have been a defendant in the action. 15 U.S.C. § 1125(d)(2)(A)(i)-(ii). In other words, the ACPA provides for *in rem* jurisdiction against a domain name only in those circumstances where *in personam* jurisdiction is not available or where the individual defendant cannot be located after a diligent effort.

The ACPA provides that a trademark owner "may file an *in rem* civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the name is located if" the court finds that the owner "is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph 1." 15 U.S.C. § 1125(d)(2)(A)(ii)(I).[FN4] Although the statute does not explicitly address whether the alleged mark owner must disprove the existence of *in personam* jurisdiction over the defendant in *any* judicial district in the United States or only in the forum where the domain name registrar is located, courts have held that the alleged mark owner must show the absence of *in personam* jurisdiction in *any* judicial district in the United States. *See Alitalia-Linee,* 128 F.Supp.2d at 347 n. 14; *Heathmount A.E. Corp. v. Technodome.Com.,* 106 F.Supp.2d 860, 867 (E.D.Va.2000).[FN5] Courts have so held because the statute was designed to provide an avenue for relief against foreign-resident cybersquatters. *See Heathmount,* 106 F.Supp.2d at 868 (for a discussion on the legislative history of the *in rem* provision of the ACPA).

FN4. Defendant's discussion about § 1125(d)(2)(A)(ii)(II) is irrelevant because Plaintiff chose to proceed *in rem* pursuant to § 1125(d)(2)(A)(ii)(I), not (II), of the statute. (*See* Def.'s Mot. at 6-7; Pl.'s Am. Compl. ¶ 6.)

FN5. Contrary to Plaintiff's argument, the requirement that a mark owner establish that the registrant of the domain name is not subject to personal jurisdiction in any United States court is not a "change" in the law-it is merely an interpretation of the law. (*See* Pl.'s Resp. at 4.)

In this case, Plaintiff has failed to demonstrate that Defendant Gordon was not subject to *in personam* jurisdiction in any judicial district in the United States. In fact, Defendant Gordon is admittedly subject to personal jurisdiction in the State of California. (*See* Def.'s App. at 12-13.) Moreover, David M. Graves, the Vice President of Network Solutions, Inc., declared under penalty of perjury in April 2000 that his company's records indicate that Defendant Gordon's address is 333 Washington Blvd. # 355, Marina del Rey, California 90292. (*Id.* at 39.)

*4 Plaintiff would have been able to maintain an *in rem* action against cheaters.com *only if* Plaintiff could not obtain personal jurisdiction over Defendant Gordon. *See* 15 U.S.C. § 1125(d)(2)(A)(ii)(I). Because Defendant Gordon is subject to personal jurisdiction in the United States in the State of California, it was improper for Plaintiff to proceed *in rem* against Defendant cheaters.com. Consequently,

the Court could not assert jurisdiction over Defendant cheaters.com and the **default judgment** shall be rendered void.

### C. Good Cause Exists.

The Court's inquiry does not end with a finding of voidness. The Court must next evaluate whether "good cause" exists for setting aside the **default judgment**. *See CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir.1992). The factors the Court must consider are (1) whether the default resulted from excusable neglect; (2) whether setting aside the **entry of default** or the **default judgment** would prejudice the adversary; and (3) whether a meritorious defense is presented. *Id.*

### 1. Meritorious Defense.

Generally, with a motion to set aside a **default judgment**, the movant must demonstrate that the outcome of the lawsuit may be different than if the **default judgment** is allowed to stand. *See Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 (5th Cir.1981). Therefore, in most cases, the court will require the movant to demonstrate a meritorious defense to the action as a prerequisite to vacating the **default judgment**. *See CJC Holdings, Inc,* 979 F.2d at 64. However, when a judgment is void, no other defense to the action need be shown. *See Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 86 (1988); *St. Paul Surplus Lines Ins. Co. v. Davis*, 983 F.2d 1057 (4th Cir.1993) (Text in Westlaw No. 91-2213) (If a defendant's "jurisdictional challenge is meritorious, it would invalidate the **default judgment**, and no other reason to vacate the default would need to be shown"); *Gray v. Permanent Mission of the Peoples Republic of the Congo to the United Nations*, 443 F.Supp. 816, 821-22 (S.D.N.Y.); 10A Wright & Miller, Federal Practice and Procedure § 2697.

### 2. Excusable Neglect.

To merit relief from **default judgment**, a party must show that its failure to file a timely answer or otherwise defend resulted from excusable neglect. *See CJC Holdings, Inc.*, 979 F.2d at 64.[FN6] Plaintiff contends that Defendant exhibited culpable conduct because, although Defendant did not receive actual notice of the lawsuit through proper service, Defendant did have constructive notice of the lawsuit through his receipt of e-mail communications from Plaintiff. (*See* Pl.'s Resp. at 8-9.) According to the evidence before the Court, Plaintiff's counsel sent an e-mail to Defendant Gordon on March 10, 2000 stating that Defendant Gordon had been sued in federal court in Dallas, Texas in connection with the domain name cheaters.com. (Pl.'s App. at 2.) However, the e-mail explicitly acknowledges that the complaint had not been served on Defendant. (*Id.*)

> FN6. Before *CJC Holdings*, Fifth Circuit held that courts should inquire as to whether the default was "willful," *CJC Holdings*, 979 F.2d at 64. However, in *CJC Holdings*, the Fifth Circuit instructed that in all future cases, the district court should apply an "excusable neglect" standard. *Id.*

*5 The summonses of the Original Complaint and the Amended Complaint were never served on Defendant Gordon and the Returns of Service for those complaints were never received by the Court. According to the evidence before the Court, Defendant Gordon's California address was always on file with Network Solutions, Inc., and yet, by Plaintiff's own admission, neither Defendant Gordon nor cheaters.com had been served with process with respect to either lawsuit. (Def.'s App. at 44.)[FN7] Defendants were not required to scour the Court's records in order to locate and read a copy of the complaint filed against them. Because Defendant Gordon was never served, Defendant's duty to respond to the lawsuit was never triggered. *See Rogers v. Hartford Life and Acc. Ins. Co.*, 167 F.3d 933, 937 (5th Cir.1999) ("Until the plaintiff serves the defendant, the defendant has no duty to answer the complaint and the plaintiff cannot obtain a **default judgment**.") Defendant's failure to respond to the lawsuit was excusable, and was not neglectful.

> FN7. Service of process was not effected on Defendant cheaters.com pursuant to § 1125(d)(2)(A) and (B) either. This action was not filed in the judicial district in which the domain name registrar (Network Solutions, Inc.) is located (Herndon, Virginia). Contrary to Plaintiff's argument, courts have consistently held that § 1125(d)(2)(C) does not provide an alternate basis for *in rem* jurisdiction. *See Mattel, Inc. v. Barbie-Club.com*, No. 00 CIV 8705 DLC, 2001 WL 436207, at *2 (S.D.N.Y.2001); *FleetBoston Financial Corp. v. FleetBostonFinancial.com*, 138 F.Supp.2d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

121 (D.Mass.2001); *Cable News Network L.P., L.L.L.P. v. CNNews.com,* 162 F.Supp.2d 484, 489 n. 15 (E.D.Va.2001). Moreover, Plaintiff's failure to effect service on Defendant cheaters.com serves as an additional basis for concluding that the **default judgment** is void.

3. Prejudice Suffered.

If a plaintiff will suffer prejudice by reopening an action, a court may deny the defendant's motion for relief from a **default judgment**. *See Owens-Illinois, Inc. v. L & N Ltd.,* 191 F.R.D. 522, 526 (E.D.Tex.2000) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 395 (1993)). The prejudice must involve more than the mere possibility of prejudice from delay inherent in every case. *See Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima,* 776 F.2d 1277, 1280 (5th Cir.1985). Likewise, delay in the collection of a judgment by a plaintiff or requiring a plaintiff to litigate the merits of the claim is insufficient prejudice to allow a **default judgment** to stand. *See United States v. One Parcel of Real Property,* 763 F.2d 181, 183 (5th Cir.1985). However, "if the defaulting party can present evidence of prejudice that is substantial and cannot be relieved by imposing terms or conditions, the court may be persuaded to deny the motion ..." 10A Wright & Miller, Federal Practice and Procedure § 2699.

Plaintiff contends that he will suffer prejudice because he has been using the internet site "cheaters.com" to market his television show for quite some time. (Pl.'s Resp. at 5-6.) The Court is not persuaded that this serves as a sufficient basis for denying the motion to set aside the **default judgment**. In fact, the Court has reason to believe that Plaintiff was not acting in good faith in seeking the **default judgment** in the first instance. There is no evidence that Plaintiff sent Defendants a copy of the Complaint at the address listed with Network Solutions, Inc. or that Plaintiff made any real attempt via e-mail or U.S. mail to encourage Defendants to respond to the lawsuit. Furthermore, Plaintiff pressed rapidly for the entry of the default and the subsequent judgment shortly after the answer date had expired. (*See supra* note 3 .)

*6 The Court is also disinclined to conclude that Plaintiff will suffer prejudice if the **default judgment** is set aside because Defendant has presented a persuasive argument that Plaintiff's conduct was culpable with respect to the **entry of default** and the **default judgment**. The Court finds it difficult to believe that Plaintiff did not know that Defendant resided in California and could not locate or serve Defendant at that location-especially when the evidence before the Court indicates that the documents on file with Network Solutions, Inc. list Defendant Gordon's California address as his address. (Def.'s App. at 12-13, 39.) Allowing the litigation to proceed on its merits would not substantially prejudice Plaintiff.

4. Timing of the Motion for Relief.

Plaintiff contends that Defendant's motion to set aside the **default judgment** should be denied because it was not filed in a timely manner according to Rule 60(b) of the Federal Rules of Civil Procedure. (Pl.'s Resp. at 6-7.) While Rule 60(b)(1), (2), and (3) motions must be brought within one year after the date of judgment, motions brought pursuant to Rule 60(b)(4) (relief from judgment based on voidness) have no set time limit. *See Carter,* 136 F .3d at 1006 ("[t]here is no time limit on an attack on a judgment as void."). In *Carter v. Fenner,* the Fifth Circuit Court of Appeals held that "[t]he one-year limit applicable to some Rule 60(b) motions is expressly inapplicable, and even the requirement that the motion be made within a 'reasonable time,' which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion." *Id.* (citing *New York Life Ins. Co. v. Brown,* 84 F.3d 137, 142-43 (5th Cir.1996)).

Therefore, the Court hereby GRANTS Defendant's Motion to Set Aside **Default Judgment** and the **default judgment** against Defendants is hereby VACATED. Because the Court lacks jurisdiction over Defendant www.cheaters.com, the Court also GRANTS Defendant's Rule 12(b)(2) Motion to Dismiss with respect to Defendant cheaters.com. Moreover, because Plaintiff has argued, and the Court has already held, that the Court does not have personal jurisdiction over Defendant Gordon, this action is no longer pending against Defendant Gordon. (*See* Mot., May 19, 2000; Order, May 30, 2000.) Therefore, the Court GRANTS Defendant's Motion to Dismiss with respect to Defendant Gordon.

II. MOTION FOR SANCTIONS

In their Motion for Sanctions, Defendants refer to three examples of allegedly sanctionable conduct

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 324289 (N.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

committed by Plaintiff. First, Defendants contend that Plaintiff filed a fraudulent "Consent Motion." Second, Defendants argue that Plaintiff failed to serve Defendants with process and concealed his knowledge concerning Defendant Gordon's whereabouts and the true location of Defendant Gordon in order to convince the Court that *in rem* jurisdiction was proper. Third, Defendants allege that Plaintiff misrepresented the law. (Mot. for Sanctions at 1-2.)

A. Legal Standard.

*7 Rule 11 of the Federal Rules of Civil Procedure provides:
[b]y presenting to the court [in] a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Civ.P. 11(b).

A violation of this section may result in the imposition of sanctions on the attorney. Fed.R.Civ.P. 11(c). By signing and filing a document with the Court, the attorney is implicitly certifying that he has complied with three affirmative duties: (1) that the attorney has conducted a reasonable inquiry into the facts that support the document; (2) that the attorney has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument for the extension, modification, or reversal of existing law; and (3) that the modification is not interposed for purposes of delay, harassment, or increasing the costs of litigation. *See Childs v. State Farm Mut. Auto. Ins. Co., 29 F.3d 1018, 1023-24 (5th Cir.1994).*

A. Consent Motion.

In their briefing, Defendants contend that because Plaintiff could not obtain personal jurisdiction over Defendant Gordon, Plaintiff invented a false basis for *in rem* jurisdiction over Defendant cheaters.com and filed misleading documents with the Court to obtain that jurisdiction. (*Id.* at 2-4.) Specifically, Plaintiff initially sought to proceed *in rem* against Defendant cheaters.com under § 1125(d)(2)(A), but only when Plaintiff realized jurisdiction was not proper under that section, Plaintiff sought to invoke jurisdiction under § 1125(d)(2)(C) (the "situs" provision).

Under Plaintiff's interpretation of this "situs" provision of the statute, the only way Plaintiff would have been able to maintain this action in this judicial district is if he deposited documents with the Court that were "sufficient to establish control and authority regarding the disposition of the registration and use of the domain name." *See* 15 U.S.C. § 1125(d)(2)(C). To accomplish this, Plaintiff filed a motion that he mischaracterized as a "Consent Motion" and that falsely represented that "the parties" sought to give the Registry of the Court control over the domain name's registration and use. (Defs.' App. at 31.) By filing this "Consent Motion," Plaintiff was able to argue (albeit, unsuccessfully) that he had satisfied the *in rem* jurisdictional requirements of § 1125(d)(2)(C). (*See* Pl.'s Resp. at 4-5.) [FN8] The Court signed Plaintiff's accompanying proposed order that described the motion as a "consent motion by the parties to the action." (*Id.* at 33.)

FN8. Plaintiff argued that the documents necessary to establish control over the domain name were located in the Northern District of Texas and that *in rem* jurisdiction was proper under the "situs" provision of § 1125(d)(2)(C). (*See* Pl.'s Resp. to Mot. to Set Aside Default at 4-5.)

*8 However, as Defendants note, "Gordon *never* saw the motion, *never* was consulted about the motion, and certainly *never* consented to it." (Defs.' Mot. at 3 (emphasis in original).) Plaintiff purposefully misled the Court into believing that Defendants consented to the motion in his attempt to secure *in rem* jurisdiction over Defendant cheaters.com.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 324289 (N.D.Tex.)
(Cite as: Not Reported in F.Supp.2d)

Page 7

B. No Service on Defendant Gordon.

In their briefing, Defendants focus in large part on the fact that Defendant Gordon was never served in this action. (Mot. for Sanctions at 12-13.) By Plaintiff's own admission, the summonses of the Original Complaint and the Amended Complaint were never served on Defendant Gordon and the Returns of Service for those complaints were never received by the Court. (Def.'s App. to Mot. to Set Aside Default J'ment at 44.) [FN9]

> FN9. Based on the evidence before the Court, Plaintiff's contention that he was unable to locate and serve Gordon is incredible. Plaintiff maintained that he conducted an exhaustive and diligent search, yet could not locate Defendant Gordon anywhere in the United States. (Pl.'s First Am. Compl. ¶ 6; Defs.' App. at 38.) After reviewing the evidence before the Court, the Court concludes that Plaintiff's statement is disingenuous. First, Defendant Gordon's California contact information was on record with Network Solutions, Inc.-a company with which Plaintiff was undoubtedly familiar-from the time this lawsuit was filed until the present (Def.'s App. at 1-2, 97.) Moreover, on May 3, 2000, Plaintiff himself filed a document with the Court that contained Defendant Gordon's California address. (*See id.* at 34.) Additionally, Plaintiff had corresponded with Defendant Gordon via e-mail on more than one occasion after the lawsuit was filed, and never sought to get Defendant Gordon's mailing address from him during these exchanges. (*See id.* at 3.) The Court believes that Plaintiff did not make a sincere attempt to locate Defendant Gordon.

In response, Plaintiff contends that he believed he was not required to locate and serve Defendant Gordon according to § 1125. Plaintiff contends that he reasonably believed § 1125 permitted him to proceed *in rem* against the domain name since he could not obtain *in personam* jurisdiction over Defendant Gordon in the State of Texas. See 15 U.S.C. § 1125(d)(2)(A)(ii)(I). Plaintiff correctly states that at the time this action was filed, the issue of whether the alleged mark owner must disprove the existence of *in personam* jurisdiction over a defendant in *any* judicial district in the United States or only in the forum where the domain name registrar is located, was unsettled. Plaintiff argued in his response to the motion to set aside the **default judgment** that he must disprove personal jurisdiction only in the jurisdiction in which the documents sufficient to establish control over the domain name were located (the "situs" provision of § 1125(d)(2)(C))-in this case, the Northern District of Texas. Plaintiff then argued that the "situs" provision of § 1125(d)(2)(C) provided an alternate basis for *in rem* jurisdiction, and that *in rem* jurisdiction in this case was predicated on that provision.

Plaintiff's interpretation of the statute is flawed in two key respects: (1) Plaintiff was required to disprove jurisdiction in any judicial district in the United States, not just in Texas; and (2) the situs provision does not provide an alternative means for asserting *in rem* jurisdiction. However, although Plaintiff's interpretation of the law was "a stretch," it does not necessarily follow that Plaintiff misrepresented the law to the Court. At the time the briefing was filed, and even today, the law in this area is not well-settled, and these issues had not, and still have not, been addressed or resolved by the Fifth Circuit.

In sum, the Court concludes that Plaintiff's tortured reading of the law and the blatant misrepresentations contained in his "Consent Motion" allowed Plaintiff to manipulate the judicial system to give him control over the domain name without having to fully litigate the merits of this case. By filing this fraudulent motion and convincing the Court that the Parties had consented to relinquish control and authority of the domain name to the Court, Plaintiff was able to obtain a **default judgment** and possession and use of the domain name without serving or notifying either defendant. This conduct is sanctionable. Therefore, Defendants' Motion for Sanctions is hereby GRANTED and Plaintiff is hereby ordered to reimburse all attorneys' fees and costs incurred by Defendants in connection with filing the motion to set aside the **default judgment** and the motion for sanctions. Defendants are directed to file an affidavit with the Court setting forth the time reasonably spent in connection with the motion to set aside the **default judgment** and the motion for sanctions, the rate charged, and the total amount of fees and expenses sought. If Plaintiff chooses to contest the fees and expenses sought, Plaintiff should file its responsive documents within twenty (20) days after the filing of Defendants' documents. Defendants will have fifteen (15) days to reply.

N.D.Tex.,2002.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2002 WL 324289 (N.D.Tex.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 8

Goldstein v. Gordon  
Not Reported in F.Supp.2d, 2002 WL 324289 (N.D.Tex.)

Briefs and Other Related Documents (Back to top)

• 3:00cv00022 (Docket) (Jan. 06, 2000)

**END OF DOCUMENT**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 2



Not Reported in S.W.2d
Not Reported in S.W.2d, 1993 WL 74740 (Tex.App.-Dallas)
(Cite as: Not Reported in S.W.2d)

Page 1

**H**
Mok v. Dunkin' Donuts Inc.Tex.App.-Dallas,1993.Only the Westlaw citation is currently available.
NOTICE: NOT DESIGNATED FOR PUBLICATION. UNDER TX R RAP RULE 47.7, UNPUBLISHED OPINIONS HAVE NO PRECEDENTIAL VALUE BUT MAY BE CITED WITH THE NOTATION "(not designated for publication)."
Court of Appeals of Texas, Dallas.
Naomi MOK and Hin Mok, Appellants,
v.
DUNKIN' DONUTS INCORPORATED and Dunkin' Donuts of Texas, Inc., Appellees.
No. 05-92-02557-CV.

March 16, 1993.

On Appeal from the 101st Judicial District Court Dallas County, Trial Court Cause No. 92-02700-E.

Before BAKER, OVARD and ROSENBERG, JJ.

OPINION
OVARD, Justice.
*1 Naomi and Jin Mok (appellants) petition for writ of error from a default judgment entered in favor of Dunkin' Donuts Incorporated and Dunkin' Donuts of Texas, Inc. (appellees). In a single point of error, appellants contend the trial court did not have personal jurisdiction over them to enter the default judgment as appellees failed to strictly comply with the requirements of Texas Civil Practice and Remedies Code section 17.045, the Texas long-arm statute. Appellants contend that the Secretary of State failed to send citation to their correct home address as required by section 17.045(a). Further, they contend that appellees did not show that appellants in fact received the process, which appellants contend is required by section 17.045(b). Because we agree that the trial court did not have personal jurisdiction over appellants, we grant the writ, reverse the default judgment, and remand the case to the trial court for further proceedings.

On February 26, 1992, appellees filed a lawsuit against appellants for breach of a lease and a franchise agreement. Appellees sought service against appellants pursuant to the Texas long-arm statute as appellants are non-residents of Texas, with no place of business in the state, nor an agent for service. See TEX. CIV. PRAC. & REM. CODE ANN. § 17.045 (Vernon 1986). For purposes of service of process, appellees alleged that the appellants' home address was 126 Hyacinth, Westbury, New York, 11590.

On March 6, 1992, the Secretary of State issued two certificates showing that on February 28, 1992 its office had received and forwarded process to Naomi and Jin Mok at the above address by certified mail return receipt requested. Each certificate further showed that the process was returned to its office bearing the notation, NO SUCH NUMBER. On March 26, 1992, the Secretary of State forwarded the citation to Jin Mok at his correct home address, 2624 Flower Street, Westbury, New York, 11590. Appellants did not answer and the trial court entered a default judgment on April 7, 1992. Appellants timely filed a motion for new trial which was denied. Affidavits filed in support of the motion show that appellants lived at 2624 Flower Street, Westbury, New York since December 15, 1991.

A successful appeal by writ of error must meet four requirements: (1) the appellant must bring his appeal by writ of error within six months after the trial court's final judgment is signed; (2) the appellant must have been a party to the suit; (3) the appellant must not have participated in the trial; and (4) the error alleged by the appellant must appear on the face of the record. TEX. R. APP. P. 45; *Bailout Bonding Co. v. State,* 797 S.W.2d 275, 276 (Tex.App.-Dallas 1990, writ ref'd). The appellants brought the writ of error on August 31, 1992, which is within six months of the judgment. Appellants meet the first requirement. Appellants were a party to the suit and, thus, meet the second requirement. The issues presented here are whether they participated in the trial and whether error appears on the face of the record.

*2 Appellees contend that appellants, both by way of the pleadings filed with the court and by appearance of their counsel in court to argue the motion for new trial, participated at trial, and thus waived their right to complain that the Texas courts did not have jurisdiction over them. We disagree.

The mere filing of an answer, or making a motion for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in S.W.2d
Not Reported in S.W.2d, 1993 WL 74740 (Tex.App.-Dallas)
(Cite as: Not Reported in S.W.2d)

Page 2

a new trial, does not cause a defendant to participate at trial and thereby preclude his appeal by writ of error. *First Dallas Petroleum, Inc. v. Hawkins*, 727 S.W.2d 640, 643 (Tex. App.-Dallas 1987, no writ). One who participates only to the extent of seeking a new trial has not participated in the trial that led to final judgment. *Lawyers Lloyds of Texas v. Webb*, 137 Tex. 107, 111, 152 S.W.2d 1096, 1097-98 (1941). Here, appellants made no appearance of any type until after they filed their motion for new trial, thus not waiving any right to contest in personam jurisdiction. Appellees' contention that appellant's attorney's appearance in court to argue the motion constituted a waiver, is also without merit. The rule is not intended to extinguish the right of those who discover that a judgment has been rendered against them and participate only to the extent of pursuing a new trial. *Lawyers Lloyds*, 137 Tex. at 110-11, 152 S.W.2d at 1097-98.

Additionally, appellees argue that appellants waived any right to contest jurisdiction because of the failure to file a special appearance pursuant to rule of civil procedure 120(a). However, rule 120(a) provides a procedure for objecting to the court's jurisdiction on the ground that the party making the appearance is not amenable to process issued by the courts of this State. TEX. R. CIV. P. 120(a). Here, appellants have affirmatively asserted that they are amenable to service of process, but were served improperly. Rule 120(a) is inapplicable. We conclude the appellants meet the third requirement for a successful appeal by writ of error as they did not participate at trial.

We turn now to the question of whether error appears on the face of the record. Appellants contend the record does not show strict compliance with the Texas long-arm statute. Section 17.045 of the Civil Practice and Remedies Code provides for substituted service of process on a nonresident by the Secretary of State. TEX. CIV. PRAC. & REM. CODE ANN. § 17.045 (Vernon 1986). Subsection (a) of that section provides: "If the secretary of state is served with duplicate copies of process for a nonresident, he shall require a statement of the name and address of the nonresident's home or home office and shall immediately mail a copy of the process to the nonresident." TEX. CIV. PRAC. & REM. CODE ANN. § 17.045(a) (Vernon 1986). Appellants assert that mailing the citation to the wrong address does not constitute compliance with the statute.

On review by writ of error the appellate court may review all of the papers actually on file in the case including the transcript and statement of facts.

*Morales v. Dalworth Oil Co.*, 698 S.W.2d 772, 774 (Tex. App.-Fort Worth 1985, writ ref'd n.r.e.). We do not indulge in the usual presumptions that a judgment is valid when reviewing a writ of error proceeding. *Hawkins*, 727 S.W.2d at 645. The failure of the record to show proper service of citation is error on the face of the record. *White Motor Co. v. Loden*, 373 S.W.2d 863, 865 (Tex. App.-Dallas 1963, no writ). To support a default judgment with substituted service under section 17.045, the record must contain proof that the defendant was, in fact, served in the manner required by statute. *Mahon v. Caldwell, Haddad, Skaggs, Inc.*, 783 S.W.2d 769, 771(Tex. App.-Fort Worth 1990, no writ). Texas courts have consistently held that this statute must be followed with strict compliance. *Verges v. Lomas & Nettleton Fin. Corp.*, 642 S.W.2d 820, 821 (Tex. App.-Dallas 1982, no writ). Inherent within this standard of strict compliance is the requirement that the statute be strictly construed. *Id.* at 822. Where there is not strict compliance with substituted service on an individual, there is error on the face of the record due to invalid service. *Garrels v. Wales Transp., Inc.*, 706 S.W.2d 757, 758 (Tex. App.-Dallas 1986, no writ).

*3 In the present case, the face of the record affirmatively shows service of process upon appellants was improper as the Secretary of State forwarded the citations to an incorrect home address at 126 Hyacinth, Westbury, New York, 11590. Appellees argue that service was proper because the Secretary of State forwarded the citation to Jin Mok at his correct home address of 2624 Flower Street, Westbury, New York on March 26, 1992. We disagree.

When the Secretary of State is served as a defendant's agent, as is the case here, the period for filing an answer runs from the date the Secretary of State is served. *Bonewitz v. Bonewitz*, 726 S.W.2d 227, 230 (Tex. App.-Austin 1987, writ ref'd n.r.e.) The Secretary of State was served on February 28, 1992. Texas Rule of Civil Procedure 99(c) states a defendant has until ten o'clock a.m. on the Monday next following the expiration of twenty days after being served with the petition to answer or else a default judgment may be entered. TEX. R. CIV. P. 99(c). The appellants, therefore, had until the Monday following the expiration of twenty days from February 28, 1992 to file an answer. This time allowance elapsed before the Secretary of State's office forwarded process to the appellants' correct home address. Even if the time for filing an answer ran from the date the defendant is served, rather than the date the Secretary of State is served, a default

Not Reported in S.W.2d
Not Reported in S.W.2d, 1993 WL 74740 (Tex.App.-Dallas)
(Cite as: Not Reported in S.W.2d)

Page 3

judgment entered on April 7, 1992 could not be based upon failure to respond to process forwarded to appellants on March 26, 1992 because the time for answering under rule 99(c) had not yet elapsed.

As the face of the record fails to show strict compliance with section 17.045(a), we need not reach appellants' argument that section 17.045(b) was not complied with. The appellants meet the fourth requirement for a successful appeal by writ of error. Therefore, we conclude the trial court did not have jurisdiction over appellants and erred in entering the default judgment. Accordingly, we sustain appellants' sole point of error.

We reverse the judgment of the trial court and remand this cause for further proceedings.

Tex.App.-Dallas,1993.
Mok v. Dunkin' Donuts Inc.
Not Reported in S.W.2d, 1993 WL 74740 (Tex.App.-Dallas)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 3



220 F.3d 587
220 F.3d 587, 2000 WL 960513 (C.A.5 (La.))
(Cite as: 220 F.3d 587)

Page 1

**H**
Briefs and Other Related Documents
Nelson v. Star EnterpriseC.A.5 (La.),2000.NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA5 Rule 47 for rules regarding the citation of unpublished opinions.)
United States Court of Appeals,Fifth Circuit.
Louis NELSON, Plaintiff-Appellant,
v.
STAR ENTERPRISE, Defendant-Appellee.
No. 99-30976
Summary Calendar.

June 15, 2000.

Appeal from the United States District Court for the Eastern District of Louisiana (98-CV-1557-T).

Before DAVIS, EMILIO M. GARZA, and DENNIS, Circuit Judges.
PER CURIAM: FN*

FN* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

*1 Louis Nelson appeals the district court's grant of summary judgment for Star Enterprise dismissing Nelson's claims of race discrimination and retaliation. The claims arose out of Nelson's employment with Star Enterprise and its decisions to not promote Nelson. Star Enterprise points to legitimate non-discriminatory reasons for the failure to promote in the record. Nelson contends that evidence introduced in an **untimely opposition** to summary judgment demonstrates that Star Enterprise's proffered reasons were pretextual and that the district court erred by failing to consider this evidence. District courts have broad discretion to consider **untimely oppositions** to motions for summary judgment. *See Hetzel v. Bethlehem Steel Corp.,* 50 F.3d 360, 367 (5th Cir.1995); *Lowndes v. Global Marine Drilling Co.,* 909 F.2d 818 (5th Cir.1990). It is undisputed that Nelson's **opposition** was **untimely** filed. We hold that the district court did not abuse its discretion in treating Star Enterprise's motion for summary judgment as unopposed in that the **opposition** was **untimely** filed. The evidence submitted in the **untimely** motion is thus not properly part of the record on appeal. *See Figgie Intl. Inc. v. Bailey,* 25 F.3d 1267, 1273 n. 21 (5th Cir.1994).

Having carefully reviewed the record properly before this court and studied the briefs of counsel, we AFFIRM for essentially the reasons set forth by the district court in its Memorandum Order dated August 5, 1999.

C.A.5 (La.),2000.
Nelson v. Star Enterprise
220 F.3d 587, 2000 WL 960513 (C.A.5 (La.))

Briefs and Other Related Documents (Back to top)

• 2000 WL 34215507 (Appellate Brief) Appellant's Brief (Jun. 29, 2000) Original Image of this Document with Appendix (PDF)
• 2000 WL 34215504 (Appellate Brief) Reply Brief of Appellant (Apr. 13, 2000) Original Image of this Document (PDF)
• 2000 WL 34215501 (Appellate Brief) Brief of Appellee (Mar. 01, 2000) Original Image of this Document (PDF)
• 1999 WL 33728374 (Appellate Brief) Brief of Appellant (Nov. 29, 1999) Original Image of this Document with Appendix (PDF)
• 99-30976 (Docket) (Sep. 16, 1999)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.